UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LAKEE MCKINNEY,

                                    Plaintiff,

           -against-

THE CITY OF NEW YORK, POLICE OFFICER GERARD
CASH, POLICE OFFICER SALVATORE MELORE,
POLICE OFFICER DAVID MERCADO, AND JOHN DOE
# 1-5, police officer(s) of the New York City Police
Department, the identity, number, and rank of whom is
presently unknown,

                                    Defendants.
------------------------------------------------------------------------X

Civil Action No.
1:19-cv-01089-MKB-VMS

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff LAKEE MCKINNEY, by and through his attorney, ABE GEORGE, ESQ., complaining of the Defendants herein, upon information and belief, respectfully shows to this Court, and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action stemming from an unlawful stop and excessive use of force in which the Plaintiff seeks relief for the Defendants' violations of his rights secured by 42 U.S.C. § 1983, by the United States Constitution, including its Fourth, Fifth, and Fourteenth Amendments.

2. Plaintiff seeks compensatory and punitive damages, an award of costs, interest, and attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c), in that the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

## JURY TRIAL DEMANDED

6. Plaintiff demands a trial by jury on each and every one of Plaintiff's claims as pleaded herein.

## PARTIES

7. At all times relevant to this action, Plaintiff LAKEE MCKINNEY is and was a resident of Kings County, New York.

8. Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as Defendant CITY OF NEW YORK's agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers.

9. Defendant CITY OF NEW YORK was at all times relevant herein the public employer of POLICE OFFICER GERARD CASH[1], POLICE OFFICER SALVATORE MELORE[2], POLICE OFFICER DAVID MERCADO[3], and other police officers not yet named.

10. POLICE OFFICER GERARD CASH, POLICE OFFICER SALVATORE MELORE, POLICE OFFICER DAVID MERCADO, and other police officers not yet named (hereinafter, collectively referred to as "defendant officers"), are and were, at all times relevant herein, duly appointed and acting officers, servants, employees, and agents of the NEW YORK CITY POLICE DEPARTMENT (hereinafter "NYPD"), a municipal agency of defendant CITY OF NEW YORK.

11. At all times described herein, the defendant officers were acting under the color of their official capacity, and their acts were performed under color of the statutes and ordinances of the CITY OF NEW YORK and/or the State of New York.

12. The actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant CITY OF NEW YORK.

13. Plaintiff is suing the defendant officers in their individual and official capacities.

## STATEMENT OF FACTS

14. On August 27, 2016, at approximately 12:26 a.m., Plaintiff was merely standing outside of his home when defendant officers, including POLICE OFFICER GERARD CASH,

---

[1] Upon information and belief, Police Officer Gerard Cash's Tax ID Number is 18279.
[2] Upon information and belief, Police Officer Salvatore Melore's Shield Number is 2092.
[3] Upon information and belief, Police Officer David Mercado's Tax ID Number is 11610.

POLICE OFFICER SALVATORE MELORE, and Police Officer DAVID MERCADO, approached Plaintiff in an un-marked vehicle, and dressed in plain clothing.

15. As the vehicle neared Plaintiff, defendant officers exited the vehicle, immediately rushed towards Plaintiff, and attempted to grab a hold of Plaintiff's person.

16. Defendant officers restrained Plaintiff, pinned Plaintiff against a pole, and searched Plaintiff's person. During this encounter, in addition to restraining Plaintiff against said pole, defendant officers punched Plaintiff in the jaw, and applied a potentially lethal chokehold on Plaintiff, which was against the written policy of the patrol guide of the New York City Police Department.

17. After searching Plaintiff's person, defendant officers ceased to restrain Plaintiff, and returned to their un-marked vehicle. Defendant officers ignored Plaintiff's requests for their names or identification numbers as they returned to their vehicle and left the place of occurrence.

18. Defendant Officers mistakenly believed that Plaintiff had a gun.

19. Plaintiff, an African-male, believed he was illegally stopped and searched, as many of his peers in his neighborhood in Brooklyn, simply because he was black.

20. On the date of the incident, Plaintiff filed a complaint with the Civilian Complaint Review Board (hereinafter "CCRB").

21. In findings released by the CCRB on February 2, 2017, the CCRB determined that 12 out of 14 of Plaintiff's allegations regarding abuse of authority and use of force had been substantiated. Among the CCRB's findings were determinations that defendant officers CASH, MELORE, and MERCADO had stopped Plaintiff, that defendant officers CASH and MERCADO frisked Plaintiff, that defendant officer CASH searched Plaintiff, that defendant officers CASH,

MELORE, and MERCADO had refused to provide their names and shield numbers to Plaintiff, and that defendant officer MERCADO had applied a chokehold to Plaintiff's neck, and used physical force to restrict Plaintiff's breathing. The CCRB recommended that in regards to the above described allegations, defendant officers CASH and MELORE be disciplined, and recommended that charges be filed against defendant officer MERCADO. **See Exbibit A:** February 2, 2017 CCRB Report.

## FIRST CLAIM: ILLEGAL DETENTION & FALSE ARREST
## FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C § 1983

22. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

23. By the actions described above, the defendant NYPD Police Officers violated Plaintiff's right to be free from unreasonable searches and seizures. The Defendant officers intended to confine the plaintiff and the plaintiff was conscious of the confinement. The plaintiff did not consent to the confinement, and his confinement by the Defendant Officers was not otherwise privileged.

24. Defendant Officers careless actions were motivated by the fact that Plaintiff was African-American.

25. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## SECOND CLAIM: EXCESSIVE FORCE
## FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C § 1983

26. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

27. Defendant Officers actions in restraining Plaintiff against a pole, punching Plaintiff in the jaw, and applying a chokehold against departmental guidelines around Plaintiff's neck, were racially motivated, undertaken without lawful justification, and showed excessive force. Defendants showed a deliberate indifference to Plaintiffs' rights, and were designed to, and did, cause bodily harm, pain and suffering to the Plaintiffs in violation of his Constitutional rights as guaranteed by the Fourth, and Fourteenth Amendments of the United States Constitution. Through these actions, Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

28. As a direct and proximate result of the Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## THIRD CLAIM:
## FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY

29. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

30. The attack against Plaintiff Mckinney, specifically Defendant Officers' use of a chokehold to restrict Plaintiff's breathing, was a violation of Plaintiff's constitutional rights to be free from excessive and potentially deadly force.

31. The Defendant Officers' use of a potentially deadly chokehold against Plaintiff was emblematic of a systematic problem that the NYPD had with officers using excessive force contrary to the NYPD's own guidelines merely because of inadequate training to teach officers how to properly restrain suspects. The Mayor and his appointed Police Commissioner knew about this problem for years yet turned a blind eye to the prevalent use of chokeholds by police officers.

32. The Mayor of the City of the New York is the City's chief policy maker. The mayor appoints a Police Commissioner and the Police Commissioner, constitutes a City policymaker for whom the City is liable. The Police Commissioner is responsible for ensuring that all of his employee officers are abiding by proper constitutional guidelines.

33. In 2014, the use of chokeholds came to the forefront of the news media when Eric Garner was killed as a result of an illegal chokehold applied by Officer Daniel Pantaleo. The Garner incident clearly demonstrated how deadly the chokehold tactic could potentially be.

34. The NYPD banned chokeholds in 1993 after a spike in deaths of people apprehended or in police custody. The NYPD's patrol guide strictly prohibits chokeholds because of the danger of death. **See Exhibit C.**

35. Shortly after Eric Garner's death the Civilian Complaint Review board performed a comprehensive assessment of chokehold complaints from 2009-2014 and in 2014 published a report (hereinafter "CCRB report") entitled "Mutated Rule: Lack of Enforcement in the Face of Persistent Chokehold Complaints in NYC." **See Exhibit B.**

36. The CCRB report concluded that between 2009-2014, the use of chokeholds were increasing despite the patrol guide prohibition. The CCRB report also concluded that the

prohibition against chokeholds became more lax over the course of the last decade. **See Exhibit B.**

38. The CCRB report found that part of the reason that the prohibition against chokeholds were degrading was that the definition of a chokehold was weakened in internal trial proceedings. In essence, in their respective charging decisions, the CCRB and the NYPD Department Advocate, with the tacit approval of the Police Commissioner, redefined a "chokehold" to require force to the neck during which an officer actually and substantially interfered with a complainant's breathing rather than simply "pressure" to the neck which "may" interfere with breathing which is how the NYPD patrol guide had defined the chokehold. The revised definition of a chokehold raised the bar in finding officers liable for these prohibited acts rather than simply holding the officers strictly liable for using a chokehold. **See Exhibit B.**

38. In a May 9, 2019, *New York Times* article, reporter Ali Winston, examined recent complaints involving chokeholds (including Plaintiff's case) and found that despite Police Commissioner Bratton spending over $35 million dollars to retrain officers after the Eric Garner chokehold death, the problem of officers using chokeholds continued into 2019, with very view officers being disciplined for breaking the chokehold prohibition. **See Exhibit C:** Ali Winston, "Despite Eric Garner and 'I Can't Breathe,' Chokeholds Still Used" New York Times, May 9, 2019.

39. In June of 2016, Former Police Commissioner Bratton further muddled matters for officers by creating an exception for the use of chokeholds in "exigent circumstances," where no exception existed before. Arguably, Bratton's *policy* decision sent a tacit message that chokeholds were permissible given the situation the officer faced. **See Exhibit C.**

40. Despite chokehold complaints dropping from 2014, there were still 133 chokehold complaints in 2018. **See Exhibit C.**

41. The May 9, 2019, New York Times article also focused on two recent victims of chokeholds:

   a. On July 14, 2018, civilian Thomas Medina was placed in a chokehold by Detective Fabio Nunez for over 22 seconds. **See Exhibit C** & **See Exhibit D**: https://www.nydailynews.com/new-york/ny-metro-video-shows-cop-using-chokehold-20180810-story.html.

   b. In another incident in July of 2017 Officer Majeed Arif placed a chokehold on civilian Manny Gonzalez after a bar brawl to restrain Gonzalez. **See Exhibit C.**

42. Eugene O'Donnell, a former lieutenant and a professor of police studies at John Jay College of Criminal Justice believes the chokehold practice persists because of a lack of proper training of police officers on how to restrain people. **See Exhibit C.**

43. Clearly, the Mayor and the Police Commissioner showed a deliberate indifference to Police Officers using a "chokehold" despite a clear prohibition against using this tactic and further the City has failed to take adequate measures to retrain officers on how to better restrain people without using this potentially deadly tactic. This problem has been pervasive and systematic within the NYPD since at least 2009.

44. The City is liable for establishing the unconstitutional chokehold policy which created Plaintiff's injuries.

45. Defendant City of New York, acting through the NYPD, had actual and/or de facto knowledge that the use of chokeholds was widespread throughout the NYPD and that officers were not properly trained on how to use alternative safer methods of restraint.

46. Plaintiff Mckinney in referencing the CCRB report (**Exhibit B**) and the May 9, 2019 New York Times article (**Exhibit C**) has pointed to concrete examples of the widespread abuses of the use of chokeholds and similar incidents to that of Plaintiff Mckinney.

47. The City's actions or lack of actions reflected a deliberate indifference to the risk of potentially deadly harm to person(s) such as the Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the Defendants individually and jointly, and prays for relief as follows:

(a) That Plaintiff be compensated for the violation of Plaintiff's constitutional rights, pain, suffering, mental anguish, and humiliation; and

(b) That Plaintiff be awarded punitive damages against the Defendants; and

(c) That Plaintiff be compensated for attorneys' fees and the costs and disbursements of this action; and

(d) For such other further and different relief as to the Court may deem just and proper.

DATED: July 12, 2019
New York, New York

/s/
Abraham M. George, Esq.
Law Offices of Abe George, P.C.
44 Wall Street, 2nd Floor
New York, NY 10005
(P) 212-498-9803
(F) 646-558-7533
E-mail: abe@abegeorge.lawyer
Attorney for Plaintiff